UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BARBARA L. DIRKSE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

                                  /

Case No. 1:16-CV-205

HON. PAUL L. MALONEY

## **OPINION**

        This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Barbara Dirkse seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## **STANDARD OF REVIEW**

        The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.

*See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age on the date of the ALJ's decision and forty-seven years of age as of her date last insured.[1] She completed high school, obtained an associate's degree, and was previously employed as a receptionist and general clerk which were performed in combination. (PageID.1791, 1813.) Plaintiff applied for benefits on March 18, 2013, alleging that she had been disabled since August 1, 2007, due to congestive heart failure, cardiomyopathy, hypertension, syncopy, dysphagia,

---

[1] Plaintiff's insured status expired on March 31, 2008. (PageID.1755, 1821). Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

hyperglycemia, peripheral neuropathy, depression, anxiety, anemia, thyroid cyst, high calcium in the liver, emesis, environmental allergies, hyperlipedemia, and miniscus tears in both of her knees. (PageID.1821, 1878–1879.) Plaintiff's application was denied on June 14, 2013, after which time she requested a hearing before an ALJ. (PageID.1831–1834, 1838–1839.) On April 10, 2014, Plaintiff appeared with her counsel before ALJ Luke A. Brennan for an administrative hearing at which time Plaintiff, Ms. Charlotte McFarland (Plaintiff's mother), and a vocational expert (VE) all testified. (PageID.1786–1819.) On July 28, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (PageID.1752–1769.) On October 2, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.1720–1723.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[2] If the Commissioner can make a dispositive finding at any

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Brennan determined Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date through her date last insured. (PageID.1757.) At step two, the ALJ determined that through her date last insured, Plaintiff had the severe impairments of congestive heart failure and left breast cancer, in remission. (PageID.1757–1758.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.1758–1759.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). (PageID.1759.) Continuing with the fourth step, the ALJ determined that Plaintiff was able to perform her past relevant work as a receptionist as actually performed. (PageID.1761–1762.) The ALJ also included an alternative step five finding, and concluded that given Plaintiff's age, education, work experience and RFC, there were other jobs that existed in the national economy that Plaintiff could have

performed. (PageID.1762.) In doing so, the ALJ specifically found that based on an RFC for the full range of sedentary work, Plaintiff was not disabled under Rules 201.21 and 201.22 of the Medical-Vocational Guidelines. (PageID.1762.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from August 1, 2007, through March 31, 2008. (PageID.1762.)

**DISCUSSION**

Plaintiff argues the ALJ's determination that she could perform her past relevant work is unsupported by substantial evidence. She further argues the ALJ's error is not harmless because the ALJ's alternative step five erroneously relied on the Medical-Vocational Guidelines. She concludes by arguing the ALJ further erred by failing to accord sufficient weight to the opinions of her treating physicians. (PageID.3420–3421.) The Court will discuss the issues below.

The Court notes that Plaintiff's brief does not properly reference the record as required by Administrative Order No. 16-MS-017, effective March 7, 2016, *available at* http://www.miwd.uscourts.gov/referencing-court-record-pageid-cite-form. Plaintiff's counsel is advised that future filings which fail to follow the Court's briefing requirements may be stricken.

1. **The ALJ's Step Four Analysis.**

In support of her application for benefits, Plaintiff submitted information regarding her work background. Of particular relevance here are two of her past positions: first, as a secretary and receptionist from 1993 through 1998 at Holwerda-Huizenga, and second as a receptionist from 2001 through 2002 at Valley Turf. (PageID.2057.) At the hearing, the ALJ questioned Plaintiff about these positions (PageID.1795–1798.) The ALJ then asked the VE to classify this work. Mr. Howerda, the VE,

responded that both positions were a "combination job" and involved work both as a receptionist (which was both generally and actually performed at the sedentary exertional level) and as a general clerk (which was both generally and actually performed at the light exertional level). Consequently, Mr. Howerda classified Plaintiff's past work as light. (PageID.1813–1814.) The ALJ proceeded to ask Mr. Howerda whether an individual similar to Plaintiff with an RFC for sedentary work could perform her past work both as actually or generally performed. (PageID.1814.) Mr. Howerda responded that such an individual could not. (PageID.1814.) When asked by the ALJ to "parse out" the receptionist position, however, Mr. Howerda responded that such an individual could return to the receptionist position as actually and generally performed. (PageID.1814.) Relying on VE testimony, the ALJ entered a finding that Plaintiff could perform her past relevant work as a receptionist as actually performed. (PageID.1761–1762.) Plaintiff contends that the ALJ erred by finding that she could perform only one portion of her past work, i.e., the receptionist position, and that she could not perform the general clerk position because of its higher exertional level.

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); 42 U.S.C. § 423(d)(2)(A) ("[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education,

6

and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). "However, where a claimant's past relevant work is a 'composite job,' which has 'significant elements of two or more occupations' and for which there is no equivalent in the DOT, [her] ability to return to that unique work situation must be 'evaluated according to the particular facts of each individual case.'" *Comeau v. Comm'r of Soc. Sec.*, No. 15-10650, 2016 WL 1253315, at *9 (E.D. Mich. Mar. 30, 2016) (Morris, m.j.) (citing SSR 82–61, 1982 WL 31387 (S.S.A. 1982). "A claimant is only capable of performing a past relevant composite job if [she] can perform each of the separate components of the position." *Burgess v. Soc. Sec. Admin.*, No. 3:15-CV-00701, 2016 WL 5800467, at *4 (M.D. Tenn. Sept. 30, 2016) (quoting *Comeau*, No. 15-10650, 2016 WL 1253315, at *9).

Plaintiff claims her past relevant work qualifies as a composite job, and the ALJ erred by focusing on only part of this work in making his step four determination (PageID.3422–3424.) As noted above Mr. Howerda testified that Plaintiff's past relevant work was a "combination occupation." He noted that the work involved tasks both as a receptionist and a general clerk and that "taken together" the position was light and semiskilled. (PageID.1813.) The ALJ noted this testimony in his decision, and did not indicate he disagreed with Mr. Howerda's characterization. (PageID.1761.) Thus this appears to be a situation where, as Plaintiff argues, Plaintiff's past relevant work was a composite position. Instead of evaluating the particular facts of this case, however, the ALJ focused solely on the duties of the receptionist position and did not further question the VE regarding the general clerk position. Indeed, the ALJ specifically asked Mr. Howerda to "parse" out the receptionist position and consider it apart from the general clerk position. (PageID.1814.) When Mr. Howerda responded that, taken alone, Plaintiff could perform the duties of the receptionist position, the ALJ relied on that response to conclude Plaintiff could

perform her past work as actually performed. This he could not do. *See Comeau*, 2016 WL 1253315, at *9. Accordingly, the ALJ's step four determination is unsupported by substantial evidence. For reasons discussed in the next section, however, the Court finds this error to be harmless.

    2.    **The ALJ's Step 5 Analysis.**

If an ALJ errs at step four of the sequential evaluation, but has provided an alternative step five determination, such error is harmless if the alternative determination is supported by substantial evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008); *see also Magee v. Colvin*, No. CV 14-13587, 2016 WL 398263, at *5 (E.D. Mich. Jan. 21, 2016), *report and recommendation adopted*, No. 14-13587, 2016 WL 465498 (E.D. Mich. Feb. 8, 2016). In this case, the ALJ gave an alternative step five determination that Plaintiff was not disabled under Rules 201.21 and 201.22 of the Medical-Vocational Guidelines. (PageID.1761.) Plaintiff claims the ALJ erred in relying on the guidelines, however, because that determination did not consider her nonexertional impairments. (PageID.3426–3428.)

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) RFC, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00.

The grids only take into consideration a claimant's exertional (i.e., strength) limitations. Accordingly, where a claimant suffers from "nonexertional limitations that significantly restrict the range of

available work," use of the grids alone to make a disability determination is inappropriate. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). As the Sixth Circuit observed:

> [W]here a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations.

*Id.* at 424 (internal citations omitted). In this case, the ALJ did not include any nonexertional limitations in the RFC. (PageID.1759.) But Plaintiff argues the ALJ could not use the grids because he found nonexertional limitations at step two. Specifically, the ALJ found Plaintiff "mild restriction in activities of daily living; mild difficulties in maintaining social functioning; [and] mild difficulties in maintaining concentration, persistence or pace." (PageID.1758.) Contrary to Plaintiff's contention, an ALJ is not precluded from utilizing the grids just because of a nonexertional impairment. Indeed, if the nonexertional impairment is not significant, the grids may be used to make the step five determination. 20 CFR. § 404.1569a; *See Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796–797 (6th Cir.1986) ("[T]he mere possibility of a nonexertional impairment is insufficient. Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level.") Here, the ALJ found that Plaintiff did not have a severe mental impairment. (PageID.1760); *see* 20 CFR § 404.1520a(d)(1) (noting that if the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, the Commissioner "will generally conclude that your impairment(s) is not severe.") The ALJ also found Plaintiff was able to perform

9

the full range of sedentary work. (PageID.1759.) In similar circumstances, the Sixth Circuit has found an ALJ did not err in relying on the grids at step five. *See Kimbrough*, 801 F.2d at 796–797. Accordingly, the ALJ did not err when relying on the grids to make his alternative step five finding.

### 3. The ALJ's Analysis of the Medical Opinions.

On May 28, 2013, Dr. Michael Dickinson, M.D., wrote a letter indicating that Plaintiff had ongoing fatigue and shortness of breath due to her diagnosis of cardiomyopathy and the medications she was prescribed. Consequently, he indicated that Plaintiff "will not be able to pursue gainful employment." (PageID.2199.) On September 5, 2013, Dr. Dickinson also completed a Physical Capacities Assessment form. The one-page worksheet contained a typed indication that Plaintiff's limitations were present since 8/1/2007, and six hand-written checks next to boxes indicating that were Plaintiff to work, she would have serious limitations in pace and concentration, would need an at-will sit/stand option, would likely miss three days of work or more each month, was best suited for part time as opposed to full time work, and would need to take breaks as needed. (PageID.2203.) Identical worksheets were completed by Dr. David Heyboer, and Dr. Timothy O'Rourke. (PageID.2202, 2220.) The ALJ assigned "little weight" to all four opinions. (PageID.1760–1761.) Plaintiff claims the ALJ erred in doing so.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76

(6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that these physicians qualify as treating sources.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff claims the ALJ "failed to follow the aforementioned Agency policy on how treating physician opinions should be evaluated." (PageID.3430.) The Court disagrees. Regarding Dr. Dickinson's May 28, 2013, opinion, the ALJ correctly noted that opinions "on whether an individual is

disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance." (PageID.1760); *see* 20 C.F.R. § 404.1527(d)(1). The ALJ also correctly stated, however, that he was still required to consider the opinion. (PageID.1760) (citing SSR 96–5p); *see also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). The ALJ gave sufficient consideration to this opinion. Specifically, he noted that the opinion was dated well after Plaintiff's date last insured, and did not indicate whether the opinion related to the relevant time period. Evidence from outside the disability insured period is "minimally probative" and is considered only to the extent that it illuminates a claimant's condition during the period at issue. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Accordingly, the ALJ did not err in assigning only little weight to this opinion.

The ALJ also gave little weight to the three completed Physical Capacity Assessment worksheets. (PageID.1761.) The ALJ noted these physicians qualified as treating physicians, but that none of them provided specific evidence in support of their opinions. ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (internal quotation marks omitted). "These cases recognize that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence." *Id.* at 567. The defect in these worksheets

12

is not cured by Plaintiff's post hoc statement claim that there is nonetheless a "massive amount of medical evidence" that supports their statements. (PageID. 3429.) Notably, despite this claim, Plaintiff does not cite to any of the supporting evidence. The fact remains the "rudimentary indications" on the opinion lack any accompanying support and accordingly meet the "patently deficient standard" of the Sixth Circuit. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)).

The ALJ also questioned whether the physicians truly believed Plaintiff's onset date was August 1, 2007, by noting that the onset date had been typed while the worksheet had been completed by hand. (PageID.1761.) This reason is related to the above in that it reflects an underlying concern amongst many courts and ALJs that a physician's opinion may be constrained by the parameters of a worksheet, especially when such is unaccompanied by supporting evidence. In sum, the Court sees no error here. Plaintiff responds, however, that if it was unclear to the ALJ whether the physician's truly believed this was an appropriate onset date, he had a "duty" to re-contact the physicians. (PageID.3430.) Plaintiff cites to SSR 96–5p, 1996 WL 374183 (S.S.A. July 2, 1996) for support. Plaintiff fails to note, however, that the former regulations which had "recogniz[ed] a duty to recontact in cases where the evidence from the treating physician [was] inadequate to determine disability and contain[ed] a conflict or ambiguity requiring clarification," *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010) (citing 20 CFR. §§ 404.1512(e), 416.912(e)), were revised effective March 26, 2012, well before the ALJ's decision in this case. The revised regulations are found at 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) and clarify that the Commissioner has "discretion, not a duty, to re-contact a medical source." *Jones v. Colvin*, No. 2:12–cv–3605, 2014 WL 1046003, at *11 (N.D. Ala. March 14, 2014).

Plaintiff makes a passing argument that the ALJ failed to properly consider the above opinions under the "appropriate regulatory factors." (PageID.3429.) In her reply brief, Plaintiff makes clear she is referring to the factors found at 20 CFR § 404.1527. (PageID.3454.) Plaintiff is correct that even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected. Rather the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96–2p, 1996 WL 374188 at *4 (S.S.A. July 2, 1996); *see also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006). Contrary to Plaintiff's apparent belief, however, the ALJ is not required to explicitly discuss each of these factors, although the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007). Here the ALJ explicitly stated he had considered the opinion in accordance with agency regulations. (PageID.1759.) As Plaintiff points out, a treating relationship is a relevant factor for consideration, but the ALJ expressly noted the physicians' status as treating sources. (PageID.1761.) Moreover, the supportability of the opinion is another relevant consideration. 20 CFR § 404.1527(c)(3). The ALJ correctly noted the physicians did not provide supporting evidence. (PageID.1761.) In sum, the record shows the ALJ properly considered the medical opinions under the agency regulations. What ultimately matters is whether the ALJ's reasons for discounting a treating source's opinion are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188, at *5). The ALJ has done so here.

For all the above reasons, this argument fails.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is

**AFFIRMED.**

A separate judgment shall issue.


Dated:  November 29, 2016                    /s/ Paul L. Maloney
                                              PAUL L. MALONEY
                                              United States District Judge